# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

DAVID TUTTLE,
    *Plaintiff*,

v.

SCOTT SEMPLE, *et al.*,
    *Defendants*.

No. 3:17-cv-01507 (JAM)

## INITIAL REVIEW ORDER

Plaintiff David Tuttle has filed a *pro se* complaint against state prison officials alleging that they deprived him of due process in connection with a disciplinary hearing concluding that plaintiff threatened another prison inmate. Based on the allegations of the complaint and its many documentary attachments, I conclude that plaintiff has not alleged plausible grounds for relief under the Due Process Clause, much less grounds that would plausibly suffice to overcome qualified immunity. Accordingly, I will dismiss this action.

### BACKGROUND

Plaintiff has filed this lawsuit against the Connecticut Department of Correction's Commissioner Scott Semple, Director of Security Christine Whidden, District Admnistrators Peter Murphy and Edward Maldonado, Disciplinary Hearing Officer Eberle, Captain Dougherty, and Investigating Officer Dousis.[1]

The following facts are assumed to be true solely for purposes of my initial evaluation of the adequacy of the second amended complaint. In December of 2016, plaintiff was confined in the restrictive housing unit (RHU) at Corrigan-Radgowski Correctional Center. In anticipation of

---

[1] I have recently ruled on three other complaints filed by plaintiff. *See Tuttle v. Semple*, 2018 WL 1168583, (D. Conn. 2018); *Tuttle v. Semple*, 2018 WL 705004, at *1 (D. Conn. 2018); *Tuttle v. Semple*, 2017 WL 5711397 (D. Conn. 2017).

1

his release from RHU, plaintiff advised Investigating Officer Dousis and Deputy Warden Jeffrey Zegarzewski that he should not be placed in any of the general population units at Corrigan because of a prior incident he had with correctional officers. Shortly thereafter, plaintiff was removed from the RHU and placed in the C-Pod housing unit. Doc. #36 at 9–10 (¶¶ 16–17).

While in the C-Pod unit, plaintiff was having "problems" with inmate Michael Roca-Rivera, who was housed in a nearby cell. On January 13, 2017, plaintiff wrote a letter to Warden Santiago, requesting that he be sent to another correctional facility or moved to another housing unit because he had a history of problems with Roca-Rivera. After failing to receive a response to the letter, plaintiff sent a second letter on January 19, 2017. *Id.* at 11–12 (¶¶ 18–20), 29-33 (January 13 letter), 34–35 (January 19 letter).

On January 21, 2017, Roca-Rivera provided block officers with a two-page letter that he said was given to him by plaintiff. A disciplinary report was issued that same day which charged plaintiff with issuing "threats" against inmate Roca-Rivera. As a result, plaintiff was returned to the RHU. *Id.* at 12 (¶ 21); 36 (January 21 disciplinary report).

On January 23, 2017, Officer Dousis informed plaintiff that the disciplinary report for threats would be dismissed, but that Captain Dougherty would issue another disciplinary report for security risk group affiliation ("SRG") for plaintiff's affiliation with the Latin Kings. This disciplinary report was based on the same letter that served as the basis for the original disciplinary report. The new disciplinary report was issued on January 23, and plaintiff was provided a copy of the report that same day. *Id.* at 12 (¶ 22); 37 (January 23 disciplinary report with details concerning specific written threat and Latin Kings connection).

Dousis further informed plaintiff that his disciplinary hearing was scheduled for January 25, 2017. Plaintiff told Dousis that he wanted an advocate to represent him at the hearing (which

2

he received), requested certain witnesses who were housed in the C-Pod unit, and requested a continuance so that he could do research and prepare his defense. Plaintiff alleges that Douisis ignored his request for a continuance and that the request "was never marked down." Dousis further stated that she had spoken with the witnesses in the C-Pod unit and that they had told her that they did not know anything and did not want to be involved in the hearing. *Id.* at 13 (¶¶ 23–25), 38 (disciplinary report relating statements of prospective witnesses).

Later that day, plaintiff was taken to the RHU manager's office where he met with Dousis and Dougherty. There, Dougherty showed plaintiff the two-page letter he had allegedly sent to Roca-Rivera. Upon review, plaintiff immediately noticed that the letter was not written in his handwriting and that the letter did not mention the words "Latin Kings" or other security risk group affiliations. Plaintiff told Dougherty and Dousis that he wanted the letter to be examined by a handwriting expert. *Id.* at 13–14 (¶¶ 26–27).

On January 25, 2017, plaintiff was brought to his disciplinary hearing, in which Lieutenant Eberle served as the disciplinary hearing officer. While explaining the allegations behind the disciplinary report, Eberle mentioned the existence of camera footage from the facility's surveillance system showing plaintiff passing something with his right hand under Roca-Rivera's cell door on January 21, 2017. Plaintiff explained that he merely bent down to pick up a pencil that Roca-Rivera had passed him and that the disciplinary report he received regarding the gang affiliation made no mention of the video surveillance footage. Plaintiff objected to the introduction of the video footage and requested a continuance to review it. Plaintiff also states that he "became very upset" at the hearing. Immediately thereafter, officers removed him from the hearing and placed him back in his cell. *Id.* at 14–15 (¶¶ 28–31).

Plaintiff was ultimately found guilty by the hearing officer "based on the inmate witness statements, DR History, facility video, evidence provided and staff documentation." *Id.* at 38 (further describing evidence relied on by hearing officer). As a result, plaintiff was advised in writing that he was officially classified as an SRG member. *Id.* at 41. Plaintiff asked Dousis why he was never granted a continuance to prepare his defense, and Dousis allegedly stated that he had never asked for one. *Id.* at 16–17 (¶¶ 32–34), 39–41.

On February 7, 2017, plaintiff wrote a letter and sent it to Commissioner Semple and others complaining about the hearing.[2] On February 23, Christine Whidden wrote a letter in response confirming the result of the hearing. *Id.* at 17 (¶¶ 35), 41.

Attempts by plaintiff to obtain a copy of the handwritten note were unsuccessful. He was informed by Eberle, Dougherty, and Dousis that he would have to submit a Freedom of Information Act ("FOIA") request. Plaintiff submitted two FOIA requests for a copy of the handwritten note in February of 2017; both requests were denied due to safety and security. *Id.* at 18–19 (¶¶ 38–39), 43–44.

Plaintiff submitted a Security Group Designation Appeal, which was denied by District Administrator Peter Murphy. *Id.* at 17–18 (¶¶ 36–37), 42. Murphy explained to plaintiff that "no significant errors with due process could be found" and upheld the SRG designation. *Id.* at 42. Murphy further noted that disciplinary decisions made by the District Administrator are not subject to further appeal.

Plaintiff then wrote directly to the Director of Security Whidden and Commissioner Semple. On July 24, 2017, Whidden replied to plaintiff, stating that "[t]he references you made

---

[2] In plaintiff's complaint, he states that he sent a letter complaining about the hearing on January 7, even though the hearing only occurred on January 25. The letter sent by Ms. Whidden references plaintiff's letter from February 7. I therefore assume that plaintiff meant to say that he sent his letter on February 7.

4

throughout the letter were clearly and uniquely associated with the Latin Kings." *Id.* at 45. Whidden also affirmed prior findings that plaintiff received all the required due process during the disciplinary process. Commissioner Semple provided a response nearly identical to that of Whidden. *Id.* at 46.

Subsequently, plaintiff wrote a letter to the District Administrator complaining about the hearing result. Acting District Administrator Butricks reiterated that the prior finding by Murphy was final. *Id.* at 47.

Plaintiff also alleges generally that he has had many "problems" with Captain Dougherty, who has threatened him several times and "displayed a very vindictive attitude" towards him. *Id.* at 20 (¶ 41). Plaintiff claims that Dougherty filed a false disciplinary report against him due to this animosity.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the compliant, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic*

5

*v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Plaintiff has brought his claims against each of the defendants in both their individual and official capacities. Because defendants are employees of the State of Connecticut, plaintiff's official-capacity claims against them for money damages are plainly barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). In addition, because plaintiff has now been transferred to another prison facility outside of Connecticut, his request for injunctive relief is moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). All that remains for me to consider are plaintiff's claims against defendants in their individual capacities for monetary damages.

Not every violation of the Constitution justifies an award of money damages against an individual defendant in a civil lawsuit like this one. That is because the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In this manner, "qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014) (citation and quotation marks omitted). A public official is entitled to qualified immunity if "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were

lawful at the time of the challenged act." *Simpson v. City of New York*, 793 F.3d 259, 268 (2d Cir. 2015) (citation quotation marks omitted).

### *Due Process*

Plaintiff claims that defendants violated his right to due process under the Fifth and Fourteenth Amendments. The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In the prison context (involving someone whose liberty interests have already been severely restricted because of his or her confinement in a prison), a deprivation of a liberty interest may be shown only if the prisoner plaintiff was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of 30 days confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. *Id.* at 486. Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009); *Palmer v. Richards*, 364 F.3d 60, 64–66 (2d Cir. 2004).

Plaintiff has adequately pled that, as a result of the disciplinary hearing, he was designated as a SRG member and was transferred to a SRG segregation unit at Northern Correctional Institution. At the time that this complaint was filed, plaintiff had been confined in the SRG unit for over nine months. For initial pleading purposes, I conclude that nine months

7

(more than 270 days) of restrictive confinement is sufficient to give rise to at least a plausible claim of a deprivation of a liberty interest. *See, e.g.*, *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*.").

Having alleged a deprivation of a liberty interest, plaintiff must further allege that he did not receive the process that was constitutionally due. The procedural protections that are due to a prison inmate facing a disciplinary hearing are not as expansive as the due process protections for a criminal defendant standing trial. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1973); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Thus, for example, a prison inmate does not have the right to counsel or to confront witnesses against him. *See Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 567-70). On the other hand, an inmate must be given "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Ibid.* (citing *Wolff*, 418 U.S. at 563–67). Moreover, there must be at least some evidence to support the findings made in the disciplinary hearing. *See Washington v. Gonyea*, 538 F. App'x 23, 25 (2d Cir. 2013).

   1. *Advanced written notice*

Plaintiff alleges that the denials of his requests for continuances violated his due process rights. Due process requires advance written notice at least 24 hours prior to a disciplinary hearing. *See Sira*, 380 F.3d at 70. Plaintiff here received notice of the charge against him on

January 23, 2017, two days before the disciplinary hearing on January 25. Plaintiff was therefore provided with the necessary notice required by the Constitution.

### 2. *Opportunity to call witnesses and present evidence*

Plaintiff further alleges that his due process rights were violated because he was not permitted to call witnesses, because he was not permitted to review video footage of the incident prior to the hearing, and because he was denied the opportunity to have a handwriting expert analyze the threatening letter that he was alleged to have given to Roca-Rivera.

A prisoner has the right to call witnesses "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Prison officials may disallow witnesses at disciplinary hearings without violating due process if the denial is "logically related to preventing undue hazards to institutional safety or correctional goals." *Ponte v. Real*, 471 U.S. 491, 497 (1985) (internal quotations omitted). Moreover, prison officials may deny witnesses for irrelevance, lack of necessity, or if a witness refuses to testify. *Jamison v. Fischer*, 617 F. App'x 25, 27 (2d Cir. 2015)

Plaintiff appears to allege that he was not permitted to call witnesses because Officer Dousis had determined that they did not know anything and did not want anything to do with the hearing. Plaintiff does not identify specific witnesses that he thinks should have testified or explain what testimony they could have provided. Douisis's decision to deny the witnesses was therefore based on lack of relevance and lack of willingness of the witnesses to testify. *See Delee v. Hannigan*, 729 F. App'x 25, 31 (2d Cir. 2018) (prison official "defendants had the right to refuse to hear irrelevant testimony from witnesses with no personal knowledge").

Moreover, even assuming that Dousis misapprehended the scope of what evidence was relevant for plaintiff's hearing or any particular witness's inclination to testify, Dousis would

9

nonetheless be entitled to qualified immunity, because plaintiff has not alleged facts to suggest that Dousis acted objectively unreasonable in declining to allow more witnesses to testify.

As to plaintiff's claim that he was not permitted the opportunity to review the video footage before the hearing, an inmate facing a disciplinary hearing does not have a "right to review all potentially inculpatory evidence prior to the disciplinary hearing." *Lasko v. Holt*, 334 F. App'x 474, 476 (3d Cir. 2009). Plaintiff reviewed the footage during the hearing and was given the opportunity at that time to present an explanation for his conduct depicted in the video. In the absence of any plausible claim that he was prejudiced by the failure to have the opportunity to watch the video before the hearing, qualified immunity again applies, because it cannot be said that an objectively reasonable officer would have known that it violated clearly established law to conduct the hearing without first allowing plaintiff an opportunity to review the video before the hearing.

Plaintiff further claims a right to have a handwriting expert review the letter that he purportedly gave to Roca-Rivera. Here again, however, there is no clearly established constitutional right of a prisoner to hire a handwriting expert to defend against charges in a prison disciplinary hearing. *See Elder v. McCarthy,* 2017 WL 2720007, at *10 (W.D.N.Y. 2017) (prison official's "failure to arrange for the testimony of a handwriting expert does not amount to a constitutional violation").

### 3. *Removal from the hearing*

Plaintiff argues that his removal from the hearing violated his right to due process. "The Second Circuit has not conclusively resolved whether an inmate has a due process right to be present at disciplinary proceedings, and district courts within the circuit have issued varying opinions regarding the issue." *Cole v. New York State Dep't of Corr. & Cmty. Supervision*, 2016

WL 5394752, at *22, *report and recommendation adopted*, 2016 WL 5374125 (N.D.N.Y. 2016). However, even those courts that have recognized a right to be physically present at the hearing have limited that right to allow an inmate to be removed if he engages in disruptive behavior. *See Clark v. Dannheim*, 2011 WL 2973687, at *1 (W.D.N.Y. 2011). On plaintiff's own account, he was removed from the hearing only after becoming "very upset." Moreover, in view that the law is not clearly established that an inmate has a due process right to be present for the entirety of the disciplinary proceedings, qualified immunity applies to protect individual defendants from a claim for money damages. *See Cole*, 2016 WL 5394752, at *23.

In short, plaintiff has failed to allege a plausible claim for violation of his constitutional right to due process with respect to his disciplinary hearing, much less a claim that plausibly suffices to overcome qualified immunity. To the extent that plaintiff complains about the handling or denial of his subsequent appeals from the disciplinary hearing, these claims are foreclosed by plaintiff's failure to allege a plausible due process claim with respect to the disciplinary hearing in the first place.

## CONCLUSION

Plaintiff has failed to allege any plausible claim for relief against any of the defendants. I will dismiss the complaint with prejudice because I conclude that any further amended complaint would be futile. Because the case is subject to dismissal for failure to state a claim, plaintiff's motions for appointment of counsel (Doc. #39) and to expedite the initial review order (Doc. #40) are denied as moot. The Clerk of Court shall close this case. It is so ordered.

Dated at New Haven this 31st day of July, 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge